Good morning. May it please the Court, Sarah Costello for Petitioner. This Court must find Petitioner Mr. Singh credible and overturn the Board's finding to the contrary. Because this is a matter of verbano affirmance, this Court has jurisdiction to review de novo not only the decision of the Board, but also the decision of the Immigration Judge in this matter. Clearly, the Immigration Judge's negative credibility finding is not supported by substantial and probative evidence and must be overturned. This is a pre-real ID case, which means that if found credible, the Petitioner's testimony can serve to meet his burden of proof for asylum. He need not present any corroborating evidence. To the extent that the Judge found the following, that is clear legal error. Secondly, Petitioner was not, in the course of his removal proceedings, afforded an opportunity to meaningfully rebut the Immigration Judge's alleged discrepancies. He was never confronted with these discrepancies, not by his counsel, not by the government attorney, and certainly, and most importantly, not by the Immigration Judge. What stopped his lawyer from asking him to clarify the discrepancies? It's unclear, Your Honor, but it is... I mean, the answer is nothing. I mean, the lawyer could have asked him, you said A, now you're saying B, how do you account for it? Well, Your Honor, it was not clear until the Judge rendered his decision which discrepancies the Judge would be relying upon. And therefore, his counsel had really no way of ascertaining... Well, he heard the same evidence everybody else did. I was going to say, part of the argument, as I understand it, is they weren't discrepancies at all. So if that's the case, then his counsel would not know to ask him about alleged discrepancies that actually aren't discrepancies. It sort of folds in on itself a little bit. That's correct, Your Honor. The discrepancies pointed out by the Immigration Judge clearly aren't supported by substantial and probative evidence and really aren't backed up by the factual record. There are several discrepancies that the Judge cites. And, I mean, first of all, he was never given an opportunity to rebut them. He was never given a meaningful opportunity to offer any corroborating evidence because he was never informed of these alleged discrepancies. Also, the government here is basing their argument for upholding the negative credibility finding and denying asylum on the discrepancies in the aggregate. Therefore, if this Court finds that the discrepancies cited by the Judge are not lawful, then this credibility determination cannot stand. Supposed we agree with you, what do we do? Remand it to the Board for what? Your Honor, this Court should find that the respondent testified credibly and therefore there is no need for corroborating evidence. We still have to remand it, correct? We can't make a decision on behalf of the Attorney General, right? This Court does have the ability to find a respondent credible.  If the Court finds that that's so, then... Well, what else could we do? Other than grant the petition and remand it, what else would there be for us to do? To simply find the respondent is credible and because... Well, I know, but that's not a... It's not the end of the ballgame. Certainly. However, if he's found credible, and this is really the only issue on appeal, he has therefore met his burden of proving that he qualifies for asylum. But that's up to the agency because they've never made that determination. Correct, Your Honor. The Immigration Judge didn't deny asylum. So, in light of... If the Court feels it cannot find the respondent credible outright and grant asylum, then it would be proper to remand to the Board for that determination. But the Court can comment on whether or not the respondent was credible in these proceedings. Counsel, Judge Gould, if I could interject a question, please. If we find that the law doesn't support the adverse credibility determination made, can we remand it under the precedent of soto alarte, stating that the remand is on an open record, so that the IJ can consider and the Board can consider whatever else they want in assessing credibility? Or should we say, this isn't sustained and we don't think the agency can challenge credibility? The latter, Your Honor. I think that the government should not be given a second opportunity to fix the obvious procedural flaws that occurred during this proceeding. The fact that the judge and the government attorney failed to present... to confront the petitioner with any of the discrepancies seriously implicates his right to due process. And it would be unjust to remand these proceedings and allow the record to be open, so that the government can now fix the problem, the serious flaw from these proceedings. I guess I question if that's correct as a matter of law, because in soto alarte we reviewed the decisions of some other circuits, which had said that we shouldn't say someone's deemed credible when we reject a determination, and that a remand is proper because an administrative agency is allowed more than one bite at the apple. I think as some other circuits have said, you seem to be saying it would be unfair to give them a second bite. It would be, Your Honor, because here, as mentioned, the respondent was deprived of this right to due process, and to then allow the government carte blanche to fix this problem isn't necessarily in accordance with due process. Well, Your Honor, if I understand it correctly, the BIA took a look at all of the so-called contradictions and said when you accumulate them, he's not credible. Your Honor, the BIA has summarily affirmed in a bravado, per matter of bravado, that IJ's decision and the government... But they added to it as well. Yeah, but what I'm getting at is if we take some of the stuff off the scale, then it would seem like the BIA gets a chance then to see whether what's left supports an average credibility finding or not. That's true, Your Honor. If the court overturns some of the discrepancies, then it would be proper to remand to the board. However, if the court finds that none of the discrepancies are supported by substantial evidence or a specific and cogent rationale for that discrepancy, then I think the court can find the respondent credible and remand him. I notice you have two minutes left. Do you want to use them up now or save them? I'd like to reserve two minutes. Thank you. Good morning. Good morning. May it please the court, Tracy Jones, appearing on behalf of the respondent, Eric H. Holder, Jr. The court should deny the position for review in this case because substantial evidence not only supports the average credibility finding, but it also supports the immigration judge's finding regarding the lack of corroboration evidence that was submitted. Counsel, let me raise an issue with you that was not mentioned earlier in the argument. I'm looking at page 48 of the administrative record, and the immigration judge says, in assessing credibility of the respondent, this court is guided by the Ninth Circuit's pattern instruction, I'm paraphrasing, credibility of witnesses, and he refers specifically to criminal jury instruction number 1.7 and considers things that our case law, a pre-real idea, says are not to be considered adequate reasons for disbelieving. Why shouldn't we hold that the immigration judge applied an incorrect legal standard in analyzing credibility here? Because in this case, Your Honor, the immigration judge did cite, as you mentioned, the criminal jury instruction. However, he did not use that as a legal standard. But he says he is. He says in assessing credibility, this court is guided by the pattern instruction, criminal jury instruction 1.7, and then he cites what he's going to rely on from that criminal jury instruction. Well, throughout the actual immigration judge's decision, he actually cites this court's pre-real ID case law and applies that, the mere reference to the criminal jury instruction was just an illustration showing that this is how credibility is usually assessed. But it's different for pre-real ID at Ninth Circuit cases, correct? That's correct. What's different about it? Can you tell me what's, I'm looking at the instruction, it says, for example, the trier of fact can take into account the witness's opportunity and ability to see and hear the things he's testifying to. That's not wrong with that, is it? It's actually not inconsistent with the statute or the regulation. The judge can take into account the witness's memory. I'm sorry, Your Honor? It says the trier of fact can take into account the witness's memory and take into account the witness's manner while testifying. Which is consistent with the pre-real ID. So what's exactly wrong with it? I mean, he's not saying I'm going to follow, I'm not going to throw out Ninth Circuit law. What's in the instruction that's so terrible? It's just the fact that he's actually considering demeanor, which was not introduced until after the Real ID Act was actually enacted. But throughout his actual decision, he doesn't refer to demeanor. He only cites to the implausibilities and inconsistencies. For example, we had a rule that a minor inconsistency could not support adverse credibility or an inconsistency that doesn't go to the heart of the claim, and that's not part of the construct of the criminal jury instructions, where any minor inconsistency can affect the judgment of the trier of fact. Yes, that's after pre-real ID. I don't see where this instruction deals with how much weight to give any factor. I'm sorry? I don't see where this instruction instructs anybody on how much weight to give. It just says these are things you can look to. Exactly, which is mostly referring to the actual demeanor of the witness, which is a post-real ID consideration that the immigration judge can take in assessing credibility. Let me ask you the same question I asked Ms. Castillo. Let's suppose we agree with her. I know you don't agree, but suppose we do. What should we do? Do we remand it to the board, and then to what? Yes, Your Honor. I was actually going to address that. If the court does decide that substantial evidence does not support the adverse credibility finding, the case should be remanded to the agency. As Your Honor mentioned, the court does not have the authority to grant asylum. That's something that is strictly within the agency's discretion, so it would have to be remanded back. The immigration judge did find that the petitioner was incredible, so if the court finds otherwise, the agency will have to determine whether the incidents that the petitioner testified to rose to the level of persecution. Would we go back and say we have determined the petition to be credible, go back and rethink it, or should we say we just find the adverse credibility finding to be flawed because you considered X and Y in the calculus, go back and consider the whole thing, but don't consider X and Y? Exactly. Credibility will have been decided if this court decides otherwise. Now, the immigration judge did also cite numerous inconsistencies in the testimony. Even though some of the inconsistencies are stronger than the others, a single inconsistency this court has held can support adverse credibility finding. Here in this case, the petitioner gave inconsistent testimony in regards to the injuries he sustained during his detention. Also, the general treatment of Akali Dao members in India. Also, the number of times his father was arrested and the dates regarding the evidence that he did submit. Look into the first inconsistency, which was the injuries he sustained during his detention. On page 83 of the administrative record, the petitioner, when asked, what was your physical condition when leaving or when being released from detention? And the petitioner indicated that he had injuries to his feet and that he went to the hospital to actually seek medical treatment for these injuries. It wasn't until on cross-examination that the petitioner enhanced his claim by stating that he also suffered injuries to his arms and shoulders. This court has held that enhancing of a claim can support an adverse credibility finding pre-reliding. The petitioner also gave inconsistent testimony in regards to the general treatment of Akali Dao members in India during the time that he allegedly was arrested. The petitioner testified that he was arrested in July of 2001 and that his father was subsequently arrested in June of 2002. According to the State Department reports in the record, it clearly indicates that during this time that many of the Akali Dao members were actually holding political office in the Indian government and also that they were able to campaign actively and successfully without any interruption from the police or the Indian government. Akali Dao during this time was also... Counsel, don't we have cases, at least pre-real ID Act, that say that a country condition report is not a means of discrediting an individual's testimony about their own experience, that while country conditions overall may be something, improved or not too terrible, an individual still might suffer something. So what use do you want us to make of the country conditions report? Well, Your Honor, the country condition reports are just general conditions of the actual... Okay, but he doesn't testify, does he, in a way that's... Or I guess I don't see the IJ connecting that up in an individualized way as to what was different, what he said that could not be reconciled. Well, Your Honor, this court has held that when using State Department country reports it does have to look at whether it was individualized. But in this sense, because the petitioner provided so many inconsistent statements and implausibilities, the immigration judge was left not knowing what to believe. So therefore, looking at the record as a whole and actually examining the country reports actually assisted the immigration judge with assessing the petitioner's already incredible and questionable testimony. The petitioner also provided inconsistent statements in regards to the dates of the evidence that he submitted. At least with regard to the letters, wasn't that pretty obviously just a mistake on a... I mean, you can't have a document that predates the events that are described in the document. That's true, Your Honor. So why wouldn't that be... I mean, if you were trying to fool somebody, you wouldn't say that. So why isn't that just an obvious mistake rather than a lie? Well, it wasn't until he was actually... until the petitioner was actually confronted with this that he changed the dates. At first he stated that he received the documents in October 2000. And then when confronted with it, he changed it and said October 2002. Why isn't that just a correction of an obvious mistake rather than... Well, he was... and the only reason why it appears that he even changed the dates was to remain consistent. And when first asked on direct, it's... I know that, but I might make a mistake, say I was born in 1999 or something, and somebody would say, what, what? And I would correct it, but it would be an obvious misstatement and not an attempt to... Well, also the postage that he submitted was also called into question in these documents. So the fact that he provided incorrect dates as to when he received the documents and also in conjunction with the questionable postage gives rise to disbelief, which the immigration judge clearly had in this case. If the court doesn't mind, can I sum up? You're out of time. Okay, thank you. You had about two minutes left. Thank you. So this court questions the government about the use of the 1.9 pattern jury instructions, and I want to underscore that I think the court is correct in its point that this does not reflect the prevailing credibility determinations of the Ninth Circuit. I have the instruction in front of me. Can you tell me exactly which part of it that you have a problem with? With the jury instructions? So these jury instructions look to be applicable to the credibility of witnesses because it's in a criminal context, not the defendant. Right, but it says, for example, that the trier of fact can consider the witness's memory. Is there anything wrong with that? Your Honor, although there may be some points of this model jury instruction that mirror or are relevant to the normal credibility determination, it's clearly not. So I'm asking you to point me to the part that you find offensive. The witness's interest in the outcome of the case, if any, that is not a proper factor in the determination of credibility. You mean if a witness is biased or prejudiced against somebody, that can't be considered? Well, clearly the witness in a removal proceeding will always be interested in the outcome of the case. Sure, that's like any party to any case. What's wrong with understanding that? Because I think that's... I'm not going to say that's the be-all and end-all. It's just, you know, you can consider it. Well, the answer to that question will most certainly always be yes. Well, okay, but sometimes they win, sometimes they lose. I don't know of any Ninth Circuit law that says you can't, that the trier of fact can't take into account a witness's interest in the outcome. It doesn't mean it's dispositive, but I don't know any rule that says you can't take that into account. Well, there are other factors here. I also find it a little hard to believe that there would be a higher standard of credibility in an asylum case than there would be in a capital murder case, for example, in which somebody is going to get executed. Well, it seems erroneous, clearly, factually, legally erroneous, on the part of this judge to rely on this model during instruction when there is both a regulatory scheme and much Ninth Circuit case law that directly talks about what's proper in assessing a credibility determination. I see if there are any other questions. Judge Gould, I take it. No questions there. Thank you, Ms. Custodian. Ms. Jones, thank you as well. The case just argued is submitted. Good morning. Thank you.
judges: Silverman, Graber, Gould